# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL ACTION NO. 3:05CV99

| | |
|---|---|
| AARON A. SMITH,<br>    Plaintiff,<br><br>v.<br><br>WAYLAND H. CATO, JR.,<br>    Defendant | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM AND ORDER

**THIS MATTER IS BEFORE THE COURT** on the Plaintiff's "Motion to Stay Litigation and Compel Arbitration" and "Brief in Support..." (Document Nos. 13 and 14) filed August 9, 2005; the "Defendant's Response to Plaintiff's Motion to Stay Litigation and Compel Arbitration" (Document No. 20) filed September 19, 2005; and "Plaintiff's Reply Brief..." (Document No. 29) filed October 12, 2005.

Also before the Court is the Defendant's "Motion to Strike and Remove the Purported Supplemental Affidavit of Aaron A. Smith..." (Document No. 45) filed March 16, 2006; the "Plaintiff's Brief in Opposition..." (Document No. 46) filed April 3, 2006; and the Defendant's "Reply Brief in Support of Motion to Strike..." (Document No. 47) filed April 13, 2006.

The Court held a hearing on the foregoing motions on April 25, 2006, and took the matters under advisement. Based on the pleadings and the arguments of counsel at the hearing, the Court will grant the Plaintiff's Motion to Stay Litigation and deny the Defendant's Motion to Strike for the reasons set forth below.

1

## I. FACTUAL AND PROCEDURAL BACKGROUND

The Plaintiff, Aaron A. Smith, is a certified public accountant and attorney. The defendant, Wayland H. Cato, Jr., is the manager of Cato Enterprises, LLC, and Cato Management, LLC ("Cato entities"). Beginning in the mid-1990's, the Plaintiff began providing professional advice and services to the families and businesses of the Defendant and Edgar T. Cato, sons of Wayland H. Cato, Sr., the founder of Cato Corporation. Cato Corporation is a women's clothing retailer.

Over the years, the Plaintiff's work on behalf of the Catos began to consume more of his time, which culminated in the formalization of a complex business and multi-faceted contractual relationship in June 2003. The details of the parties' business relationship are more specifically set out in the Plaintiff's affidavit in support of his motion to compel arbitration (Document No. 15).

According to the Plaintiff, the Defendant personally negotiated the terms of their business relationship over several months. The Defendant was also assisted by multiple lawyers. The Plaintiff and Defendant met on June 11 and 12, 2003, to further discuss the terms of their relationship. The Plaintiff presented the Defendant with proposed terms in a written format ("term sheet"). The term sheet reflects four primary components to the parties' relationship: (1) the Plaintiff's base salary; (2) the Plaintiff's percentage interest in Cato Enterprises' profits; (3) a gift transfer to the Plaintiff of Cato stock; and (4) establishment of two joint investment accounts in the name of the Plaintiff and the Defendant.

The first and second components of the parties' business relationship are memorialized in a written Employment Agreement executed on June 12, 2003, and signed by the Plaintiff and the Defendant in his capacity as the manager of each of the Cato entities. This agreement contains the arbitration provision at issue in this action. The Defendant did not sign the Employment Agreement

in his individual capacity. The Employment Agreement essentially rendered the Plaintiff a captive consultant and financial services provider to the Cato entities for a base salary of $300,000 per year payable by Cato Management LLC. Exhibit A (expressly incorporated into the Employment Agreement) requires the Plaintiff to devote substantially all of his available time (excluding holidays, weekends and vacations) to "representation of Cato interests." Exhibit A further provides that the Plaintiff will operate as a chief financial officer until the date of the Defendant's death. Upon the Defendant's death or incapacity, Exhibit A provides that the Plaintiff will assume "the duties of the Executive Manager/President of Waygroup, LLC and President of the Wayland H. Cato, Jr. Foundation, Inc. and will devote substantially all available time (excluding holidays, weekends and vacations) to representation of Cato interests." The Employment Agreement does not define the term "Cato interests."

The third and fourth components of the parties' business relationship regarding the stock transfer and joint accounts are not memorialized in the Employment Agreement. However, both components are reflected in the term sheet. Regarding the joint accounts, the term sheet states:

> Two joint accounts established with rights or [sic] survivorship: $500,000 at Morgan Stanley to be invested at discretion of AAS[,] $500,000 at Ryan Beck to be invested at discretion of AAS[.] No withdrawals or transfers from either account during WHC, Jr.'s lifetime without both parties['] approval. Acknowledgment that this is a testamentary gift in appropriate trust documents.

Additional documents were executed regarding the joint accounts, including (1) joint account agreements and letters signed by the Defendant authorizing the transfer of $500,000 to each of the joint accounts (not in evidence in this action); and (2) the Defendant's "Fourteenth Amendment to Revocable Declaration of Trust" signed by the Defendant as grantor and trustee and providing that funds in joint accounts in the Plaintiff's and Defendant's names be distributed to the Plaintiff on the

Defendant's death.

Subsequent to the finalization of the parties' business relationship as set forth above, the Plaintiff developed and implemented estate tax and income tax planning strategies for the Cato families which resulted in millions of dollars in tax savings for them. The Plaintiff also assisted with developing asset diversification strategies. The Defendant established and funded the joint accounts, and stock was gifted from the Defendant to Plaintiff and his family members. The parties operated pursuant to this arrangement for approximately a year-and-a-half, until the Defendant terminated the relationship with the Plaintiff in writing. Correspondence from the Defendant dated January 5, 2005, refers generally to the Plaintiff's alleged gross negligence and misconduct as the grounds for termination, and was allegedly published to several professionals affiliated with the parties and involved with the underlying transactions. Shortly thereafter, the Defendant withdrew all of the funds in the joint accounts without the Plaintiff's approval. The content of the Defendant's termination letter and his withdrawal of funds from the joint accounts form the basis of the Plaintiff's defamation and breach of contract claims against the Defendant in this action.

In February 2005, the Cato entities filed an "Application and Order Extending Time to File Complaint" in the Superior Court of Mecklenburg County, North Carolina, seeking damages from the Plaintiff and a declaration of their rights under the Employment Agreement. On March 4, 2005, the Plaintiff filed this federal action against the Defendant seeking specific performance of the parties' agreement regarding the joint accounts, and damages for breach of contract and defamation. The Plaintiff filed a demand for arbitration against the Cato entities on the same day. The Defendant in this case joined the Cato entities as a plaintiff in the state court action on March 9, 2005.

On July 8, 2005, the state court stayed the Cato entities' claims and ordered them to be

submitted to arbitration pursuant to the arbitration provision in the Employment Agreement. The state court also dismissed Mr. Cato's claims against Mr. Smith without prejudice so that he could file them as counterclaims in this action. The Defendant filed counterclaims against the Plaintiff in this action alleging damages arising from tax liability on the joint accounts, and that the Plaintiff breached his fiduciary duties. More specifically, the Defendant states in his first counterclaim that if it is determined a contract existed between the parties regarding the joint accounts, the Defendant is entitled to recover from the Plaintiff the total amount the Defendant paid as state or federal income tax on the interest and earnings from the joint accounts. The Defendant alleges in his second counterclaim that the Plaintiff breached a variety of duties in connection with the stock transfer and establishment of the joint accounts.

The Cato entities' claims against the Plaintiff and the Plaintiff's claims against the Cato entities are currently being arbitrated. Discovery has ensued in the arbitration and a hearing is tentatively set for fall 2006. Depositions have not yet been taken. On August 9, 2005, the Plaintiff filed a motion to stay litigation and compel arbitration of claims pending in this action with the claims already being arbitrated.

## II. DISCUSSION

The issues before the Court are whether the claims and counterclaims asserted by and against the Defendant in his individual capacity are arbitrable, and whether the Defendant can be bound by the arbitration provision in the Employment Agreement he signed, not as an individual, but as the manager of the Cato entities. The Plaintiff contends that arbitration should be compelled because the claims in this case and in the arbitration are "inextricably linked, connected and inseparable" from one another, and because the Defendant stands in an agency relationship to the Cato entities.

In contrast, the Defendant argues that he should not be compelled to arbitrate because he was not a party to the Employment Agreement and did not sign it on his own behalf. He claims that he is a non-signatory to the Employment Agreement and cannot be bound by the arbitration provision therein unless the Plaintiff can prove the Defendant agreed to arbitrate, or demonstrates that the Defendant should be estopped from avoiding arbitration because he sought a direct benefit under the Employment Agreement. The posture of the parties makes this an atypical case. Notwithstanding, the Court finds for the reasons stated below that this is an appropriate case to compel arbitration.

It is undisputed that the Employment Agreement contains a valid arbitration clause which states, in part:

> If any controversy, dispute, or claim related to this Agreement ("Claim") arises between the parties, they shall each attempt, in good faith, to resolve such dispute. If they are unable to resolve such Claim to their mutual satisfaction within thirty (30) days of written notice from one to the other of the existence of such Claim, then the Claim shall be submitted to binding arbitration by a single arbitrator in accordance with the Commercial Arbitration Rules of the American Arbitration Association (the "Rules") then in effect.

Employment Agreement at 3, Exhibit B to Plaintiff's "Motion to Stay Litigation and Compel Arbitration" (Document No. 13). It is also undisputed that the Defendant did not sign the Employment Agreement in his individual capacity, and that the Agreement does not memorialize the parties' intentions regarding the joint accounts underlying most of the claims in this action. Nonetheless, the Plaintiff argues that arbitration is proper because the claims in this case are based on the same facts, inherently inseparable, and closely intertwined with the claims being arbitrated by and against the Cato entities, and because the Defendant is an agent for the Cato entities. The Court is persuaded by the Plaintiff's arguments and the following legal authorities: <u>J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile, S.A.</u>, 863 F.2d 315 (4th Cir. 1988), <u>American Recovery Corp.</u>

v. Computerized Thermal Imaging, Inc., 96 F.3d 88 (4th Cir. 1996), International Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH, 206 F.3d 411 (4th Cir. 2000), and Long v. Silver, 248 F.3d 309 (4th Cir 2001).

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq*., establishes a federal policy favoring the enforcement of written agreements to arbitrate.[1] Specifically, the FAA provides that arbitration clauses "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2 (2004). The FAA requires courts to stay the trial of the action and compel arbitration in the event of a refusal to comply with a valid agreement to arbitrate. *See* 9 U.S.C. § 3 (2004). The Supreme Court has announced its "healthy regard for the federal policy favoring arbitration." Moses H. Cone Memorial Hosp. v. Mercury Constr. Co., 460 U.S. 1, 24-25, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983). Pursuant to this policy, courts must liberally construe the parties' intentions as to issues of arbitrability, and resolve any ambiguities as to the scope of the arbitration provision in favor of arbitration. Washington Square Securities, Inc. v. Aune, 385 F.3d 432, 436 (4th Cir. 2004). Courts may not deny a party's motion to compel arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." Long v. Silver, 248 F.3d 309, 316 (4th Cir 2001) *quoting* United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582-83 (1960).

### A. The claims and counterclaims are arbitrable

The rule in this Circuit is that "a broadly-worded arbitration clause applies to disputes that do not arise under the governing contract when a 'significant relationship' exists between the

---

[1] Neither party disputes the applicability of the FAA in this case.

asserted claims and the contract in which the arbitration clause is contained." Long v. Silver, 248 F.3d 309, 316 (4th Cir 2001) *citing* American Recovery Corp. v. Computerized Thermal Imaging, Inc., 96 F.3d 88, 93 (4th Cir. 1996). A fair review of the record clearly reflects the existence of a significant relationship between the claims in this action and the Employment Agreement.

The Plaintiff asserts claims for specific performance, breach of contract, and defamation against the Defendant. Count one asks the Court to order the Defendant to specifically perform his agreement with the Plaintiff regarding the establishment and maintenance of the joint accounts. The Plaintiff's second and alternative claim requests compensatory damages from the Defendant for breach of their agreement regarding the joint accounts. Count three alleges that the Defendant defamed the Plaintiff by publishing a letter terminating the Employment Agreement which contained false, slanderous, and defamatory accusations about the Plaintiff. See Plaintiff's Complaint (Document No. 1).

The Defendant asserts two counterclaims against the Plaintiff. The first claim alleges that if a contract regarding the joint accounts is found to exist, the Defendant is entitled to recover the total amount paid or payable by the Defendant as state or federal income tax on the interest and earnings from the joint accounts. The Defendant's second counterclaim contains numerous allegations regarding the stock transfer, the joint accounts, and the Plaintiff's breach of fiduciary duties owed to the Defendant regarding both. See The Defendant's Amended Answer and Counterclaims (Document No. 24).

As noted above, the Plaintiff establishes by affidavit that he and the Defendant formalized their long-standing professional relationship, which resulted in the execution of multiple contracts and transactions in June 2003. The parties' agreements embodied four integral components intended

to ensure that the majority of the Plaintiff's available time was dedicated to "Cato interests" and to compensate the Plaintiff for time and services rendered. The Plaintiff contends that each of the four components were part of an "integrated business agreement" under which he agreed to provide and did provide consulting services to the Defendant and to the Defendant's companies in return for a financial compensation package that included a base salary, profits interest, creation and maintenance of joint accounts, and a stock transfer. The record, viewed as it must be in its entirety, reflects the significance and interdependence of the various parts of the parties' relationship and agreements. Furthermore, the Defendant fails to provide any evidence to dispute the Plaintiff's sworn testimony. In fact, the Defendant concedes that the joint accounts were created contemporaneously with the Employment Agreement. Moreover, at oral argument, defense counsel stated that he could not say that the joint accounts are not related to the Employment Agreement.

The Court finds the uncontroverted evidence in this case establishes that each claim and counterclaim are significantly related to the Employment Agreement. All of the claims involve either the joint accounts or the Employment Agreement or both. The Defendant does not deny that the joint accounts are related to the Employment Agreement. The Plaintiff's affidavit demonstrates the interrelatedness between all four components of the parties' business relationship, and therefore establishes the existence of a significant relationship.

To avoid this conclusion, the Defendant contends that the arbitration provision is not broad, but rather restrictive, because it provides that only claims arising "between the parties" shall be arbitrated. The Court disagrees with the Defendant's interpretation of the effect of this phrase. The arbitration provision in this case is in fact broadly-worded. It provides that "any controversy, dispute, or claim related to this [Employment] Agreement" be submitted to binding arbitration. In

9

other words, the arbitration provision encompasses every dispute bearing a significant relationship to the Employment Agreement, not merely disputes regarding the interpretation or performance thereof. American Recovery Corp. v. Computerized Thermal Imaging, Inc., 96 F.3d 88, 93 (4th Cir. 1996) *citing* J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile, S.A., 863 F.2d 315 (4th Cir. 1988). The Court does not believe that the phrase "between the parties" in the arbitration provision restricts the application of the provision in the manner suggested by the Defendant, particularly in light of the agency relationship between the Defendant and the Cato entities, discussed more fully below.

For the foregoing reasons, the Plaintiff has satisfied the "significant relationship" test announced in J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile, S.A., 863 F.2d 315, 321 (4th Cir. 1988), and discussed in American Recovery Corp. v. Computerized Thermal Imaging, Inc., 96 F.3d 88, 93 (4th Cir. 1996) and Long v. Silver, 248 F.3d 309, 315-20 (4th Cir 2001).

### B. Non-signatories may be compelled to arbitrate

The next issue is whether the Defendant can be bound by the arbitration provision in the agreement he signed as the manager of the Cato entities and therefore be compelled to arbitrate the claims asserted by and against him in his individual capacity. The general rule is that arbitration is a contractual matter, and a party should not be compelled to arbitrate claims which he has not agreed to arbitrate. International Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH, 206 F.3d 411, 416 (4th Cir. 2000). However, the Fourth Circuit has stated,

> While a contract cannot bind parties to arbitrate disputes they have not agreed to arbitrate, '[i]t does not follow ... that under the [Federal Arbitration] Act an obligation to arbitrate attaches only to one who has personally signed the written arbitration provision.' Fisser v. International Bank, 282 F.2d 231, 233 (2d Cir. 1960). *Rather, a party can agree to submit to arbitration by means other than personally signing a contract containing an arbitration clause. Well-established common law principles dictate that in an appropriate case a nonsignatory can enforce, or be bound by, an arbitration provision within a contract executed by other parties.*

10

International Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH, 206 F.3d 411, 416-17 (4th Cir. 2000) (emphasis added). *See also* Washington Square Securities, Inc. v. Aune, 385 F.3d 432, 435 (4th Cir. 2004). The Court finds that this is an appropriate case to bind the Defendant to the arbitration provision.

There is precedent for referring the claims in this action to arbitration. In J.J. Ryan & Sons, Inc., the Court stated, "[w]hen the charges against a parent company and its subsidiary are based on the same facts and are inherently inseparable, a court may refer claims against the parent to arbitration even though the parent is not formally a party to the arbitration agreement." J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile, S.A., 863 F.2d 315, 320-21 (4th Cir. 1988). The Fourth Circuit extended this principle to a corporation and its shareholders in Long v. Silver, 248 F.3d 309 (4th Cir 2001). One of the issues in Long was whether shareholders could invoke the protection of an arbitration agreement they did not sign with respect to claims asserted against them significantly related to the agreement containing the arbitration provision. Citing its earlier opinion in J.J. Ryan & Sons, the Circuit Court stated

> [W]e see little difference between a parent and its subsidiary and a corporation and its shareholders, where, as here, the shareholders are all officers and members of the Board of Directors and, as the only shareholders, control all of the activities of the corporation. *Cf. Thomson-CSF, SA. v. American Arbitration Ass'n,* 64 F.3d 773, 776 (2d Cir. 1995) (Noting theories of contract and agency law as examples under which a non-signatory can compel arbitration, including agency and veil piercing/alter ego). As in *J.J. Ryan*, the facts and claims against the corporation and its shareholders are so closely intertwined that Long's claims against the non-signatory shareholders of the Corporation are properly referable to arbitration even though the shareholders are not formal parties to the 1972 Agreement.

Long v. Silver, 248 F.3d 309, 320 (4th Cir 2001).

Thus, it appears that the Fourth Circuit has carved an exception to the rule that a party should not be compelled to arbitrate claims which he has not agreed to arbitrate, where (1) the allegations

11

against a non-signatory and a signatory are based on the same facts, and are inherently inseparable or closely intertwined; and (2) the non-signatory exercises substantial control over the signatory's activities. Such is the case here, where the Defendant, as the manager of the Cato entities, stands in an agency relationship to the signatories to the Employment Agreement, and furthermore, personally negotiated every aspect of the integrated business agreement with the Plaintiff.

The claims being arbitrated are strikingly similar to the claims in this action, and are clearly based on the same facts. In the arbitration, the Cato entities seek declaratory relief, contract rescission, and monetary damages. Each of the four components of the parties' integrated business agreement are implicated by the Catos' claims. Also in the arbitration, the Plaintiff asserts three claims against the Cato entities for breach of contract, breach of implied covenant of good faith and fair dealing, and defamation. The Plaintiff alleges in the first claim that the Cato entities (1) breached the Employment Agreement with regard to payment of severance and redemption of profits interest. The second claim alleges that the Cato entities engaged in malicious and oppressive conduct in attempting to terminate the Employment Agreement for cause when no such cause existed. The Plaintiff's claim for defamation against the Cato entities is the same as his defamation claim against the Defendant in this action. The Court finds that the claims in this action and the claims being arbitrated are largely based on the same facts, and are inherently inseparable and closely intertwined.

Regarding the second prong of the exception, there is no dispute that the Defendant stands in an agency relationship with the Cato entities, and that the Defendant signed the Employment Agreement, which contained an arbitration provision, in his capacity as manager of the two entities that control Cato Management and Cato Enterprises. The Defendant personally negotiated each

component part to the parties' integrated business agreement in this case, and the Defendant has not disputed the extent of his relationship to the signatories of the Employment Agreement. Therefore, the Court finds that the claims in this case may be properly referred to arbitration in accordance with the factors discussed in J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile, S.A., 863 F.2d 315 (4th Cir. 1988) and Long v. Silver, 248 F.3d 309 (4th Cir 2001). See also Collie v. Wehr Dissolution Corp., 345 F. Supp.2d 555 (M.D.N.C. 2004).

The Defendant attacks this precedent as inapposite due to the inverse posture of the parties, *i.e.*, in the cited cases, the non-signatory sought to avail the protection of arbitration, where here the non-signatory seeks to avoid arbitration. The Court disagrees with this view in light of the settled principle in this Circuit which provides in an appropriate case, that a non-signatory can enforce, *or be bound by*, an arbitration provision within a contract executed by other parties. International Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH, 206 F.3d 411, 416-17 (4th Cir. 2000); Washington Square Securities, Inc. v. Aune, 385 F.3d 432, 435 (4th Cir. 2004).[2]

Accordingly, the Court will grant the Defendant's motion to stay litigation and compel arbitration.

---

[2] Although not relied upon by the Plaintiff, the Court notes that the Plaintiff's uncontroverted affidavit establishes, *inter alia*, that the Defendant received a personal direct benefit under the Employment Agreement, *i.e.,* extraordinary tax savings resulting from Plaintiff's services and strategies. Therefore, had the Plaintiff relied on the theory of equitable estoppel to compel arbitration, that argument may have provided an additional or alternative basis for compelling the Defendant to submit to arbitration in this case. See R.J. Griffin & Co., v. Beach Club II Homeowners Ass'n, 384 F.3d 157 (4th Cir. 2004); Long v. Silver, 248 F.3d 309, 320-21 (4th Cir 2001); and Thomson-CSF, S.A., v. American Arbitration Association, 64 F.3d 773, 776-780 (1995). This theory, however, does not form the basis of the Court's decision.

C. Defendant's Motion to Strike the Plaintiff's Supplemental Affidavit

The Plaintiff filed a supplemental affidavit in support of his motion to compel arbitration approximately five months after the briefing period ended on the motion and without leave of court. The Plaintiff supplemented his affidavit with discovery and information he obtained in the arbitration subject to a confidentiality order therein, in an attempt to buttress his characterization of the components of the parties' relationship as an integrated business agreement. The Court has not relied on the Plaintiff's supplemental affidavit in any way in ruling on the Plaintiff's motion to compel arbitration. Therefore, in light of the Court's decision to stay this action and compel arbitration, it is not necessary to address the merits of the Defendant's motion to strike and it is therefore, denied as moot.

### III. ORDER

**IT IS, THEREFORE, ORDERED** that the Plaintiff's "Motion to Stay Litigation and Compel Arbitration" (Document No. 13) is hereby **GRANTED**. This action is **STAYED** pending the resolution of the arbitration, American Arbitration Association Case No. 31 181 Y 0059 05.

**IT IS FURTHER ORDERED** that the Defendant's "Motion to Strike and Remove the Purported Supplemental Affidavit of Aaron A. Smith..." (Document No. 45) is hereby **DENIED as MOOT**.

Signed: May 9, 2006

_____
David C. Keesler
United States Magistrate Judge